# Hannay *against* Stewart.

A judgment will not be reversed because of the admission of evidence which was illegal when given, if it was made legal by evidence afterwards given.

The declarations and representations of an agent, made in effecting an agreement or doing an act within the scope of his authority, are evidence in an action against his principal. But declarations made under other circumstances are not evidence to charge the principal, or to establish the fact of agency.

The submission of a fact to the determination of the jury, without evidence to support it, is error.

ERROR to *Warren* county.

James Stewart against Jackson Hannay. This was an action on the case, founded upon the allegation that the plaintiff had endorsed a note for Oliver Parker, who failed to pay it, and he was obliged to pay the money; and that at the time the said Oliver Parker was the agent of the defendant, and the money had been borrowed for the use of the defendant, and that the plaintiff had endorsed it upon his credit. The facts of the case and the points which arose are fully stated in the opinion of the court.

*Galbreath*, for plaintiff in error.
*Struthers* and *Pearson*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The first error is an exception to the admission

[Hannay v. Stewart.]

in evidence of a certified copy of a letter of attorney, from Jackson Hannay, the plaintiff in error, who was the defendant below, to Oliver Parker, which had been recorded in the recorder's office of Warren county. The copy offered, was certified under the hand and seal of the recorder; but objected to, because it was not offered for the purpose of establishing any matter relative to land or real estate, and, therefore, not made evidence by the recording acts. It may be that this objection was good at the stage of the trial, when the evidence was first offered, but we think, if it were, that it was removed by the subsequent evidence given in the course of the trial, which rendered the copy admissible evidence upon other grounds independent of the recording acts. That there was such an original was testified, as appears by the charge of the court to the jury, by one of the subscribing witnesses to it, and that he was told at the time, by Hannay himself, the plaintiff in error, that he had appointed Oliver Parker his attorney or agent, to attend to his mills and carry on the lumbering business, in Warren county. It was also testified by the recorder, that the original was truly copied into the record book of his office, and that the certified copy was a true copy of the record so made; and that the original, after being recorded, was returned to Parker, who took it away, and before the trial had left the country, so that neither he nor it was to be had. Besides, in addition to all this, it was also testified that Parker had attended to the mills of the plaintiff in error, in Warren county, and managed the same in connection with the lumbering business, in the manner authorized, apparently, by the copy of the letter of attorney given in evidence. It having then been made to appear from all the evidence, adduced to the court below, that it was not in the power of the party offering the certified copy to produce the original, which doubtless would have been the best evidence of its contents, we cannot say, that in connection with all the other evidence, it was not admissible or that the defendant in error was not entitled to the benefit of it; on the contrary, we think he gave evidence sufficient before the close of the trial, to give him a right to claim the benefit of it, and that no injury, therefore, was done to the plaintiff in error, supposing it to have been admitted prematurely in the first instance.

The second error is also an exception to the admission of evidence, that is, to certain parts of the deposition of Robert Arthurs, which are underscored; and in which the witness states, that Oliver Parker told him, in the fall of 1832, that he was an agent for the plaintiff in error, in carrying on the lumbering business for him, of which he informed the defendant in error the next day or so, supposing it might be of some advantage to him; and that, in the spring of 1833, witness again met with Parker, after hearing that he (Parker) had been at Jamestown the day before, for the purpose of procuring money, when he asked him what luck he had, to which Parker replied, that he had obtained 200 dollars of Judge

Foot.　It does appear to us, that the court erred in receiving this evidence.　And although the counsel for the plaintiff below, in offering the first part of it, disclaimed doing it for the purpose of proving the agency of Parker, and said it was offered merely to show that Parker carried on the lumbering business for Hannay, the plaintiff in error, and that the witness communicated the same immediately thereafter to the defendant in error, yet this does not seem to remove the objection to its admissibility; for the witness saw and stated nothing except what Parker told him.　But what Parker said to him, seeing it was not said under circumstances which might have induced the plaintiff to endorse the note, was neither evidence of agency nor of his employment in the lumbering business, under the authority of Hannay, as against the latter, and consequently ought not to affect his rights.　This, however, is not all; for it seems to be obnoxious to the same objection which exists against the latter part of the evidence embraced within the exception.　This latter part is nothing but an account of what Parker said he had done the day before.　He did not even say to the witness, that he did it or procured the 200 dollars for Hannay or as his agent; but if he had, still it would not have rendered such declarations evidence against Hannay.

In order to determine whether the declarations or representations of an agent are admissible as evidence against his principal, it may be proper, first, to state the grounds upon which they have been deemed to be so.　The statements of an agent, generally, though made of the business of his principal, are not to be taken as equivalent to the admissions of the principal, for then the latter would be bound by them, whether true or false, which would render the situation of every principal truly perilous.　Every man has a right to make such representations of what he has done as he pleases, and to bind himself to abide by them, whether true or otherwise; and they of course may be given in evidence against him afterwards, when relevant to the issue trying; not, however, because the facts therein stated are true, but because he has the right to pledge himself in the same manner as if they were true; and if true, justice naturally requires that he should be bound by them, or if not, it is no more than the infliction of a just penalty for his disregard of truth.　But it would not be reasonable to hold him responsible upon the same principle, for the declarations of his agent; nor upon any principle, except that of truth and the protection of those against loss or injury, that might otherwise arise from their having confided in the representations of the agent, made by him at the time of entering into the agreement, or of transacting the business, under the authority of his principal.　According to Mr Phillips, in his Treatise on Evidence, vol. i. page 77, it is only the statements or representations of the agent, made *in effecting an agreement or doing an act within the scope of his authority*, that are evidence against his principal, and considered

VI.—3 M

equivalent to his own acknowledgments; because, as he says, they may be explanatory of the agreement, or determine the quality of the act, which they accompany, and, therefore, must be binding on the principal, as the act or agreement itself. For instance, what an agent says at the time of a sale, which he is employed to make, is evidence as part of the transaction of selling. But the principal is not bound by a representation of the agent *at another time.* This seems to be a fair exposition of the rule, as laid down by Chief Justice Gibbs, in Langhorn *v.* Allnutt, 4 *Taunt.* 511, where he says, " When it is proved that A is agent of B, whatever A does, or says, or writes, *in making of a contract as agent of B,* is admissible in evidence, because it is *part of the contract* which he makes for B, and which, therefore, binds him; but it is not admissible as the *agent's account of what passes.*" To which Mr Phillips, after reciting it, page 78, adds, " such declarations are admitted in evidence, not for the purpose of establishing the truth of the fact stated, but as representations, by which the principal is as much bound as if he made them himself, and which are equally binding, whether the fact stated, be true or false." Now, in the present case, it is manifest the representations of Parker to Arthur were only his account of what he was doing, without the witness's seeing him do any thing at all, and of what had passed or been done by him the day before, and, therefore, not admissible.

But supposing the facts stated by Parker to be true; were they relevant to the issue; for unless they were, they ought to have been rejected for this reason also. The plaintiff below, could only entitle himself to recover in this action from the defendant, by showing that he had either endorsed the note, which he afterwards paid as endorser, upon the credit of the defendant below, or that the money raised upon his endorsement, was applied to the use of the defendant. Now the note on its face appearing to have been drawn by Parker on his own account, his representations to Arthur, admitting them to be true, did not in the least tend to prove either of those facts, upon which the plaintiff's right to recover turned, and were, therefore, inadmissible.

For this last reason also, we think, that the court erred in admitting that part of Eliel T. Foot's evidence, which was objected to, and forms the ground of the third error. The part objected to, is that, in which the witness states, that " at the request of Parker, the maker of the note, it was discounted at the Chautauque Bank, to enable him to run lumber to market, and that he pledged his honour, that 150 or 170 dollars should be used in running *his* (that is, Parker's own) lumber down the river, and the balance in starting or preparing lumber to run to market." Suppose here, that Parker intended to do as he stated to the witness, it would seem, that it was *his own* lumber, and not the defendant's that he designed to send to market by means of the money: and if so, could make nothing in favour of the claim of the plaintiff below, and

therefore, the defendant might have waived his objection to it. But it would seem, as if this evidence was regarded by the counsel of the plaintiff below, and by the court too, as tending to support the claim of the plaintiff: then take it to be what the plaintiff's counsel seemed to think it was, that Mr Foot had testified, that Parker told him, at the time of getting the note discounted, that he wanted the money for the purpose of sending the defendant's lumber to market, and pledged himself to use it accordingly, still it would not have been evidence against the defendant below, because it could not have been considered as going to prove that the plaintiff, who was not present, and heard nothing of it, had either endorsed the note on the credit of the defendant, or that the money so obtained, was even intended, much less actually applied to the use of the defendant in any way whatever.    Besides, it is too plain to be mistaken, that the statement of Parker to Mr Foot, was not made with a view to pledge the credit of the defendant, whose name was not mentioned, nor he himself alluded to at the time, but done merely to make Mr Foot believe, that the money was wanted for the purpose of conveying lumber to market, supposing that the bank was disposed to give this object a preference in granting accommodations.

The fourth error is not sustained.    According to the rule which has been established and recognized by this court in several cases, the notes taken by Mr Pearson of A. Holley's testimony given on the trial of a prior action, brought for the same cause between the parties here, were rightly admitted to be read in evidence to the jury.

Among the remaining errors assigned, consisting of exceptions to the opinion of the court in answering points submitted by the counsel on both sides, and to matters of instruction contained in the charge to the jury, it is only necessary to notice one or two points, in which the court appear to have erred.

The court submitted it as a question of fact to the jury, to be decided by them, whether the plaintiff below had not endorsed the note upon the credit of the defendant; and if so, they ought to find for the plaintiff.    In this, we are of opinion there was error; because no evidence was given to the jury on the trial, going to show, that the plaintiff endorsed the note upon the credit of the defendant.    On the contrary, the evidence all went to prove that he must have endorsed it on the credit of Parker, and at his instance: for, besides the fact of the note being drawn by Parker, as would seem from the face of it, for his own benefit, and on his account, it appeared from the evidence, that the plaintiff had made contracts, and had had dealings with Parker to a considerable amount on his own individual account; and upon no occasion, did it appear, that he had transacted business with him as the agent of the defendant. It was also shown, that both the plaintiff and Parker resided at the time, in Warren county of this state; and that the defendant

resided in the state of New York, at a distance from the plaintiff and Parker; and had not been in the county of Warren, or at the mills, from the time the letter of attorney was given, until after Parker left the country; in short, it thus appeared, that he was rather a stranger in that section of the country, and out of the view of the parties concerned in raising the money. It is also, equally clear, that no evidence was given, from which the jury could fairly infer that the money obtained upon the endorsement of the plaintiff was applied in any way to the use, or for the benefit of the defendant. And to this effect, the court ought to have instructed the jury; and further, that in the absence of evidence, as it appeared, tending to prove that the plaintiff had either endorsed the note upon the credit of the defendant, or that the money obtained thereon. had been appropriated to the use of the latter, their verdict ought to be in his favour.

Judgment reversed, and a *venire de novo* awarded.