### BRIDGEWATER GAS CO. v. HOME GAS FUEL CO

(Circuit Court of Appeals, Sixth Circuit. November 27, 1893.

#### No. 67.

1. CONTRACT—BREACH—EVIDENCE—MOTIVE.

In an action for breach of contract to supply natural gas, evidence of large expenditures in constructing the necessary pipe line is inadmissible to rebut an imputation of bad faith, although the complaint directly al-

leges the same; for the motive of the breach is immaterial, and the allegation mere surplusage.

**2. SAME—EVIDENCE OF DAMAGES.**

In an action by a gas-distributing company against a natural gas company for breach of contract to supply gas under an arrangement for a division of the receipts, contemporaneous contracts by defendant to supply consumers at specified rates, being referred to in the contract sued on as one of the sources of such receipts, are admissible as a basis for computing damages.

**3. SAME—CONSTRUCTION—NATURAL GAS COMPANIES.**

A contract to supply natural gas, unless unable by "due energy and diligence" in maintaining existing wells and sinking new ones to obtain a sufficient supply from present or future acquired territory, requires reasonable effort and expenditure to connect newly acquired territory in a contiguous county with the old pipe line.

**4. REVIEW—ESTOPPEL.**

A party cannot take advantage of error in instructions given at his request, and stating the law too favorably to him.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

At Law. Action by the Home Gas Fuel Company against the Bridgewater Gas Company for breach of contract. Verdict and judgment were given for plaintiff, and defendant brings error. Affirmed.

Statement by SEVERENS, District Judge:

This action was brought in the circuit court for the northern district of Ohio, in the eastern division thereof, to recover damages for the alleged breach of a contract entered into by the Bridgewater Gas Company, a Pennsylvania corporation, with Robert McCurdy and others, on 1st day of July, 1887, for the supply of natural gas to them or their assignee, to be distributed by the latter parties to various public and private buildings in the city and township of Youngstown, in that state. The case was tried by a jury, who rendered a verdict for the plaintiff in that court, and, after judgment thereon, comes here on a writ of error prosecuted by the defendant. The contract above mentioned, and which was admitted by the answer, contained a variety of stipulations, but the material parts upon which the controversy turned were the following:

"Whereas, the first party proposes to lay down a supply line of gas pipe, extending from its gas fields, located in Beaver county, in the state of Pennsylvania, to the city of Youngstown, Ohio, for the purpose of furnishing a supply of natural gas, for use as fuel in the manufacturing establishments and the public and private buildings of the city and township of Youngstown, Ohio; and whereas, said second parties propose to provide for the distribution of said gas, through the instrumentality of a gas fuel corporation, now organized or to be hereafter organized under the laws of Ohio; and whereas, the parties hereto mutually desire to enter into a contract under which said first party shall furnish such supply of gas, and under which said second parties shall make provision for its distribution from said supply line to the premises of consumers: Now, therefore, in consideration of the obligations entered into by said second parties, as hereinafter written, said first party hereby agrees to go forward and construct from its said gas fields in Beaver county, Pennsylvania, to the city of Youngstown, Ohio, a good and substantial line of wrought-iron gas pipe, about one-half of which line shall be constructed of pipe twelve inches in diameter, and the other half of pipe ten inches in diameter, or all of twelve-inch pipe. Said first party agrees to have said line completed and ready for operations by the tenth day of November, 1887, and for the period of ten years from and after that date said first party agrees to furnish said second parties, or their assigns, with a supply of natural gas sufficient for the supply of all such consumers within the city or township of Youngstown, Ohio, as

said second parties or their assigns may, from time to time, desire to supply with gas: provided, always, that said first party shall, by the exercise of due energy and diligence in maintaining existing wells in good working order, and in sinking new ones from time to time, as needed, be able to keep up and procure from its present or future acquired territory a sufficient supply of such gas."

A subsequent stipulation in the contract provided that the Bridgewater Company might furnish gas on its supply line to the American Tube & Iron Company at Haselton, which was near the city. Another provision was that the parties of the second part were to distribute gas from the supply line to the Mahoning Valley Iron Company, Brown, Bonnell & Co., Cartwright, McCurdy & Co., and the Youngstown Rolling Mill Company, with whom the Bridgewater Company, on the same day, and in connection with the same transaction, made other contracts for the supplying to them of natural gas at their several establishments.

It was also stipulated in the contract that if it should be ascertained that the volume of gas that should be furnished by such a line of supply pipe should be more than sufficient to supply the said rolling mills, the tube and iron company, and the patrons of the second parties, the first parties might sell all such surplus to other consumers along the line between Youngstown and its gas fields, but with the express understanding that the above-enumerated parties should be first fully supplied in preference.

By the terms of the contract the receipts for the gas thus supplied were to be divided between the parties thereto on the basis of a percentage therein fixed. It was recited that the contract was made in anticipation of the formation of a corporation, to which it was understood the second parties would assign. In pursuance of this understanding the Home Gas Fuel Company was organized, and in November, 1887, the second parties assigned their rights under the contract to it.

The Bridgewater Gas Company proceeded to lay down its supply line of pipe, and had completed the work and begun delivering the gas in November, at about the time of the above-mentioned assignment to the Home Gas Fuel Company, and that company distributed it by its pipes, which it had laid in the mean time, to the various parties above mentioned, according to the agreement. It was claimed by the latter company, which was the plaintiff below, that from the first the gas supplied was not in sufficient quantity to meet the requirements of the contract; and it was shown that the Bridgewater Company ceased altogether to supply gas on the 19th of August, 1889, and took up its line of pipes. It was also shown upon the trial that the Bridgewater Company, after the date of the contract, acquired other gas territory in the county of Allegheny, which lies adjoining to Beaver county; and the plaintiff contended that the Bridgewater Company was bound to use reasonable effort to bring that territory into contribution to supply gas under the contract if the doing so was fairly practicable. The Bridgewater Company claimed that, after having made all due exertion to furnish the gas, they were unable to provide it, by reason of the failure of the gas wells in their fields in Beaver county, and the absorption of their supply in meeting other obligations of prior date to this engagement, and that they were therefore excused by the stipulation of their contract in that regard for the breach complained of, having, as they claimed, made all the effort required by it.

The rulings of the court upon the questions of law arising at the trial are referred to in the opinion. The subject of damages was, by the consent of counsel and the direction of the court, divided into periods—First, from November 10, 1877, to the time of the trial; and second, from that date to the expiration of the contract, November 10, 1897. The jury rendered a verdict for the plaintiff, assessing the damages at $27,000 for the first-named period and nothing for the second.

Thos. W. Sanderson and A. W. Jones, for plaintiff in error.

Hine & Clarke and George F. Arrel, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge, having made the foregoing statement of the case, delivered the opinion of the court.

The leading questions in the case are involved in the construction of the contract upon which the action was founded, and will be dealt with in considering the instructions given by the court to the jury. We will first dispose of the allegations of error in the rulings of the court upon the rejection and reception of evidence. The defendant offered to prove by the witness Hice what was the expense of the pipe line to Youngstown which the defendant had laid down. This evidence, upon objection by the plaintiff, was excluded by the court, and we think properly. It is argued by counsel for the plaintiff in error that this proof was admissible to rebut the imputation of bad faith and improper motive on the part of the Bridgewater Company in failing to furnish the gas. But the action was founded upon contract, and the damages sought to be recovered were such as flow from the alleged fact of failure to perform its stipulations. The motive of defendant in performing or violating its agreement was wholly immaterial. The question in issue was whether it actually did the one or the other.

Reference is made to the allegation in the petition that the defendant's refusal was "with willful intent to violate the rights of this plaintiff." But this is mere superfluity, and adds nothing whatever to the substance of the pleading. Such an averment did not change the real issue which the court was required to try and determine. In cases of contract, as a general rule, the law takes no notice of the motives of the defaulting party. The intent cannot be averred in pleading, except as matter of form, nor evidence be given in regard to it. Sedg. Dam. (6th Ed.) pp. 36, 187, 188; 1 Greenl. Ev. § 51; Bromfield v. Jones, 4 Barn. & C. 380.

It is also urged that the proof offered would be persuasive evidence that the defendant, having so great an interest at stake, would not, without good reason, abandon the performance of the contract. But such evidence was too remote, and involved the necessity of considering too many other circumstances not relevant to the issue, to warrant its admission. 1 Greenl. Ev. § 448; Bank v. Stewart, 114 U. S. 224, 231, 5 Sup. Ct. 845.

It is next assigned as error that the court, against the objection of the plaintiff in error, admitted in evidence the contracts of July 1, 1887, between the Bridgewater Company and three of the rolling-mill companies mentioned in the principal contract. But those contracts, besides being contemporaneous with that in suit, and connected with it by mutual references, fixed the schedule of prices to be paid by the rolling-mill companies for the gas to be supplied them, and this furnished the basis for estimating the value of the receipts which were to be divided between the parties to the contract in suit, and were, therefore, competent evidence in respect to the damages sustained from the defendant's nonfulfillment. We see no reason to doubt that the ruling of the court in the reception of this evidence was right.

Upon the construction of the contract on which the controversy mainly turned, the parties differed widely. The defendant, the

Bridgewater Company, contended that the contract was to be construed as if the prior obligations of the company, which were known to the second party, were recited in the agreement, and its stipulations then read as subject to them.    The court, in its instructions to the jury, seems practically to have adopted this view, and the defendant's contention in that regard was satisfied.    We are therefore not required to determine whether that construction was proper or not, the ruling being in the defendant's favor.

The question left open to review arises upon the provision in the contract that the defendant should not be held liable for the failure of gas if that result happened notwithstanding the exercise of due energy and diligence in maintaining existing wells in good working order and in sinking new ones from time to time, as needed, in its present or future acquired territory.    The defendant below contended that it was not bound to acquire the new territory in Allegheny county, and that, if it did, such acquisition not being obligatory, it was not bound to turn the supply from that territory into the Youngstown line.    The plaintiff insisted, on the contrary, that upon the acquisition of that territory, if it could, with a fairly reasonable effort and expense, having regard to all the circumstances, be brought into connection with the Youngstown line, it was brought under the operation of the contract, and the defendant was bound to exercise diligence and energy in sinking and maintaining its wells in that territory for the supply of the gas contracted for.    The court agreed with the plaintiff in this construction, and instructed the jury accordingly.    We think that this was right.    There was nothing in the contract which restricted the area within which the after-acquired territory might be located to Beaver county.    The business of the Bridgewater Company was the production of gas, and its supply to distant localities.    Nothing appears from which it should be necessarily implied that it was in the contemplation of the parties that its operations for supply should be limited to Beaver county.    It may be that the territory in the adjoining county of Allegheny was more nearly contiguous to, and even more conveniently operated in connection with, its fields in Beaver county, than other lands in the latter county which it might acquire.    There is therefore no such limitation in the express terms of the contract, and there is nothing in the nature of the circumstances as shown by the proof, from which the court would be justified in interpolating it by implication.    We think the limitations put by the court upon the liability of the defendant to use its gas fields in Allegheny county to contribute to the supply of gas under the contract were sufficiently favorable to the defendant.

The court, after giving full instructions to the jury upon this subject, and explaining the rights and obligations of the parties under the contract upon the construction which we hold to be the proper one, yielded to a request of the defendant to charge the jury as follows:

"If the jury shall find from the evidence that, after the parties entered into the written contract in question in this action, the defendant company found, procured, and developed a natural gas field or territory in

the county of Allegheny, no part thereof being in the county of Beaver, and did connect the same by pipes with its other natural gas field within Beaver county, in order to increase its supply of natural gas for general distribution, as well as the supply to the plaintiff company, then the court charges you that so doing would not change in any manner, in the absence of a new or additional contract or agreement between the parties, the obligations of defendant under the written contract originally entered into by the parties, so as to require defendant company to continue such supply from such natural gas field outside of Beaver county to plaintiff. The original contract being specific and unambiguous in its terms with respect to the fields to be drawn on for a supply of gas, its provisions cannot be changed by the acts of the parties under it, unless such acts amount to a new or different or subsequent agreement for some valid and new or additional consideration."

It is now insisted that the charge of the court was inconsistent, that the law was rightly stated in the request of defendant, and that the previous instruction of the court was therefore wrong. We do not agree to this, and, for the reasons already stated, think that the defendant was not entitled to this instruction. But though we think it was error to give it, it is clear that the defendant, having invited the court to do so, is not in position to complain of it, or allege for error any inconsistency produced thereby. Upon the whole record we are of the opinion that the defendant has no reason to complain either of the result or the rulings upon which it was reached.

The judgment must be affirmed, with costs.