## RIVERSIDE FIBRE & PAPER CO. v. O. C. KECKLEY CO.

Circuit Court of Appeals, Seventh Circuit.
April 12, 1929.

No. 4084.

Hirsch E. Soble, of Chicago, Ill., for appellant.

Jesse R. Long, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. Appellant, the Riverside Fibre & Paper Company, is a Wisconsin corporation engaged in manufacturing paper, with its principal office at Appleton, Wis. Appellee, the O. C. Keckley Company, is an Illinois corporation with its office at Chicago, engaged in selling pipe and materials used in paper mills. At the time of the transactions here involved, William Van Order was the selling agent of appellee. S. W. Murphy was the general manager and secretary and treasurer of appellant, and J. A. Bethke was an engineer in its employ, with desk and office in the plant at Appleton.

The Nipigon Fibre & Paper Mills, Limited, was a Canadian corporation of Nipigon, Ontario, Canada, with authorized capital stock of $1,000,000, of which $500 was subscribed and paid for.

Prior to January, 1921, Bethke gave several orders to Van Order for materials. These were shipped to the Riverside Company, used in its plant at Appleton, and paid for by it. About June, 1920, Bethke spoke to Van Order with reference to an order for materials for another mill. They had several conversations during the summer and fall of that year; Bethke saying that another pulp mill was in contemplation and asking Van Order to give prices on certain materials. About January 8, 1921, at Bethke's office in the Riverside plant, Van Order made a list of the materials desired with prices, the total amounting to $13,530.48, and handed it to Bethke. Bethke then gave the order, for the materials listed, to Van Order, who sent it to the Keckley Company. This order was not signed by any person, nor was there any written acceptance of it. On January 10, 1921, Bethke wrote to the Keckley Company the following letter:

(Letterhead of)

"Riverside Fibre & Paper Company

"Appleton, Wis., January 10, 1921.

"O. C. Keckley Company, Chicago, Illinois. Gentlemen: This is to be recognized as confirming order for pipe, fittings, valves, bolts, packing, tools, and miscellaneous supplies as given Mr. Van Order on this date for the sum of $13,530.48, in Canadian cash. The above material is F. O. B. Nipigon Fibre & Paper Mills, Ltd., Nipigon, Ontario, duty and tax free.

"It is the understanding that we are to receive credit for Homestead valves which will not be used but which are included in the above price, and that we are also to pay them addition for Toledo pipe machine, from 4″ to 8″, and the difference in price between wrought iron nipples and galvanized extra heavy steel nipples.

"This material is to be shipped via Canadian National Mile Post 79 to the Nipigon Fibre & Paper Mills, Ltd., Nipigon, Ontario, Canada, and invoiced to them.

"Yours truly,

"Nipigon Fibre & Paper Mills, Ltd.,

"J. A. Bethke."

The Keckley Company shipped the goods as directed, and Bethke testified that he was sent to Nipigon by the Riverside Company to superintend the construction of a mill there and that he there received the goods and that they went into that mill. Two other employés of the Riverside Company went with Bethke to Nipigon and assisted in this work. While there, all were paid their salaries by the Riverside Company.

A check for $2,500 was given upon delivery of the goods. The Nipigon company sent to the Keckley Company a statement of

the account for the materials. This is as follows:

(Letterhead of)
Nipigon Fibre and Paper Mills, Ltd.,
Nipigon, Ontario, Canada. Apl. 18th, 1921.
Messrs. O. C. Keckley & Co.,
Chicago.

| | | |
|---|---|---|
| Invoices as per your Statement............ | | $15,044 13 |
| Less Cheque enclosed...................... | | 2,500 00 |
| | | $12,544 13 |
| Duty on Car load of Pipe & Fittings ........................... | $1,839 88 | |
| Freight (see below)................ | 33 97 | |
| Demurrage (owing to faulty invoices) .......................... | 70 00 | |
| Freight on 3 Bbls & 1 box.... | 50 91 | |
| Duty on separate shipment....... | 133 97 | |
| Freight on car..................... | 786 16 | 2,880 92 |
| Balance of Account........................ | | $ 9,663 21 |
| Interest 90 days at 7%.................... | | 169 10 |
| Note enclosed for balance and Interest.... | | $ 9,832 31 |

Nipigon Fibre and Paper Mills Ltd.
Per R. Jens Webbe.

Subsequently, on July 7, 1921, the Nipigon company paid $1,000 on the account, leaving a balance due of $8,832.31.

In November, 1921, the Riverside Company gave its note for $2,500 in part payment of the balance shown to be due by the statement set out above, and afterwards paid the note. After repeated demands for payment, the Keckley Company brought this action for the balance.

The declaration contained one count averring that the Nipigon company bought the goods and that the Riverside Company guaranteed payment for them. To this the Riverside Company pleaded the Statute of Frauds. There was also a common count for goods sold and delivered to the Riverside Company. To this was pleaded the general issue. The court instructed the jury that the plaintiff could not recover on the theory of guaranty. The jury found for the plaintiff for the unpaid balance of the account with interest from the date of the statement of April 18, set out above, and judgment was entered accordingly.

Appellant urges five grounds for reversal of the judgment:

(1) The overruling of its motion to direct the jury to find for it.

(2) The admission of certain evidence on behalf of the Keckley Company.

(3) The verdict is the result of passion and prejudice against the Riverside Company, caused by improper conduct and remarks of the Keckley Company's counsel in the presence of the jury.

(4) There was error in the allowance of interest.

(5) The court erred in charging the jury.

1. The rule is well understood that, if there is substantial evidence to support the verdict, the denial of appellant's motion to direct a verdict in its favor is not error. The issue on the count for goods sold and delivered was whether the goods were sold to the Nipigon company or to the Riverside Company. Reserving for later discussion the question of the competency or admissibility of the evidence, there was before the jury evidence warranting the finding that the goods were sold to and purchased by the Riverside Company. Keckley Company's agent, who sold the goods, and Bethke, who bought them, both testified to that. There were many facts and much correspondence introduced in evidence bearing on this question, some of it supporting the testimony of the two witnesses and much of it inconsistent therewith. Counsel have argued various phases of the evidence at great length. Much, if not all, of the argument was proper to present to the jury, but we cannot review or weigh the evidence. It was the province of the jury to decide this issue of fact, and we are not authorized to set aside their finding.

2. Of course, the evidence urged in support of the verdict must be competent evidence. The objection to the evidence of Van Order and Bethke as to the statements of Bethke at the time of the purchase is twofold: It is insisted, first, that the letter of January 10, 1921, above set out, is the contract for the purchase of the goods, and that this cannot be contradicted or modified by oral evidence of negotiations prior to the execution of the contract; and, second, that certain statements of Bethke, made at the time of the purchase and sale, were outside of and beyond his agency or employment, and therefore not binding on the Riverside Company.

The rule that when parties put their contract into writing, all prior and contemporaneous negotiations are merged in the written contract, is a salutary one. But the letter of January 10 is not such a written instrument as to call for the application of this rule. It is not a complete contract, nor is it a proposition and an acceptance thereof. While "Nipigon Fibre & Paper Mills, Ltd., J. A. Bethke," appears at the foot of the letter, it is Bethke's letter. He testified that he wrote it, it is written on the letterhead of the Riverside Company, and there is no evidence that he in any way represented or had authority to represent the Nipigon company. Further than this, the letter does not speak at all on the question as to who

in fact purchased these goods or upon whose credit they were to be furnished.

■ The question of the fact of Bethke's agency and the extent of it were questions for the jury. The evidence shows that he was in the employ of the Riverside Company; that he had bought other goods for them from the Keckley Company for which the Riverside Company had paid; that he bought the goods sued for, and that they were shipped as his letter states it was agreed they should be shipped; that he was sent to Nipigon by the Riverside Company to superintend the erection of the mill there, and that he received the goods and used them in the erection of the mill; that the Riverside Company paid him for all this service; and that the Riverside Company afterward paid $2,500 on the purchase price of these goods. These warrant the inference that Bethke was the agent of the Riverside Company in this purchase.

■ The testimony of Van Order, that in several instances prior to the purchase in question he had sold to Bethke goods for the Riverside Company which had been received by the Riverside Company and paid for by it, was competent upon the question of Bethke's agency to make the purchase in question. "It is usually held that an agency may be implied from prior habit or course of dealing of a similar nature between the parties, or from a previous agency, as where the alleged principal has previously employed the alleged agent as such in transactions similar to the one in question." 2 Corpus Juris, p. 441, and cases cited.

■ The statements of Bethke to Van Order (in substance, that the purchaser was the Riverside Company) were in the nature of inducement to Van Order to agree to sell and deliver these goods, and were in connection with the duties of Bethke in the exercise of his agency or authority to purchase.

"It is because the declaration of an agent is a verbal act and part of the res gestæ that it is admissible, and whenever what he did is admitted in evidence, then it is competent to prove what he said about the act while he was doing it." Xenia Bank v. Stewart, 114 U. S. 224, 228, 5 S. Ct. 845, 847 (29 L. Ed. 101).

"He who sets another person to do an act in his stead as *agent* is chargeable by such acts as are done under· that· authority, and so too, properly enough, is affected by admissions made by the agent in the course of exercising that authority." 2 Wigmore on Evidence (1904 Ed.) 1278.

■ Appellant further complains of the admission of testimony of Bethke that, under directions from Murphy, he purchased equipment and had it sent to Nipigon for use in the mill there, and also Bethke's testimony that the Riverside Company sent large sums of money to Nipigon for use in the enterprise there. This testimony was competent as tending to show that the Riverside Company had an interest in the Nipigon enterprise.

Murphy was the general manager and secretary and treasurer of the Riverside Company. This, together with all the circumstances in evidence, tended to show that his acts, in purchasing equipment and sending it and the money to Nipigon, were the acts of the Riverside Company.

Complaint is also made that the cross-examination of Murphy exceeded the scope of his direct examination. This contention is without merit.

■ 3. The matter complained of under this head arose during the introduction of evidence before the jury, appellant's counsel charging appellee's counsel with indirectly testifying without being a witness. The circumstance was a trivial one, and, whatever its effect might otherwise have been, the court instructed the jury, "that they should decide the case on the evidence and not on the statements of counsel. The jury understand, of course, that statements of counsel or any arguments are not evidence."

■ 4. As already stated, the Riverside Company in November, 1921, gave its note for $2,500 in part payment of the balance shown to be due on the statements exchanged between the Nipigon company and the Keckley Company. These statements show a liquidation of the account as between the Nipigon company and the Keckley Company. The Riverside Company, having paid a portion of this account, must have accepted it as made between the Keckley Company and the Nipigon company, and this would warrant the jury in finding that the account was liquidated as to the Riverside Company also, so far as this question of liquidation is concerned.

Further, if it be conceded that this was a Riverside Company purchase, or that the Riverside Company had become primarily liable for the debt—and the jury so found—then there was sufficient evidence to warrant the jury in finding that there was "unreasonable and vexatious delay of payment." Volume 5, c. 74, par. 2, p. 4416, Callaghan's Illinois Statutes Annotated.

5. Many of the objections to the charge to the jury relate to the question as to the Riverside Company's liability as guarantor of this account for the Nipigon company. The record shows that, in the discussion with regard to the instructions, before the jury retired, the questions as to whether the Riverside Company was primarily liable as the purchaser of these goods or whether the Nipigon company was the purchaser and the Riverside Company was secondarily liable as its guarantor were discussed. Taking the instructions as a whole, the court told the jury that the plaintiff could not recover from the defendant unless the jury found the defendant was primarily liable, and also told the jury that the plaintiff could not recover on the theory of guaranty. There was then left before the jury the question whether or not the Riverside Company was in fact the purchaser of the goods or had become primarily liable for the payment for them. The court further told the jury that the fact that the goods were bought in the name of the Nipigon company was one of the facts to be considered by them in arriving at their verdict. The instructions upon these phases of the case covered the ground and are unobjectionable.

The record shows this: Appellee sued appellant upon two theories—one, that the purchase of the goods was made by the Nipigon company and payment for them guaranteed by the Riverside Company; and, the other, that the purchase, though made in the name of the Nipigon company, was actually made by the Riverside Company. The court in its instructions told the jury that the appellee could not recover upon the theory of guaranty because there was no written guaranty. There was evidence before the jury to sustain the finding that the purchase was made by the Riverside Company and that the goods were delivered by appellee to it.

We find no substantial error in the record, and the judgment is affirmed.