**Glen W. PERSONS, Appellant,**

v.

**GERLINGER CARRIER COMPANY, a**
corporation, Appellee.

**No. 14541.**

United States Court of Appeals
Ninth Circuit.

Oct. 25, 1955.

338

Dilley & Eymann, George E. Dilley, Santa Rosa, Cal., Angell & Adams, San Francisco, Cal., for appellant.

Walter J. Cosgrave, Maguire, Shields, Morrison & Bailey, Portland, Or., for appellee.

Before BONE and LEMMON, Circuit Judges, and JAMES M. CARTER, District Judge.

LEMMON, Circuit Judge.

With the hindsight so characteristic of many appellants, the plaintiff below now vigorously attacks the instructions of the District Court—instructions to which his counsel formally announced there was no objection, in a statement made in open court immediately after they were given.

The appellant also assails the admission of certain testimony relating to the appellee's officers' lack of notice of any previous comparable accident involving any of its fork lift trucks while operated without the boom. It is assumed by the appellant that there is a conflict of laws between California, the *locus in quo*, and Oregon, the *locus fori*. As we shall see, this conflict is largely illusory.

1. *Statement of the Case*

The appellant brought an action for $205,000 as general damages for the appellee's alleged negligence in the manufacture and assembling of a fork lift truck, which it is asserted tipped over and injured the appellant while he was driving it. The jury returned a verdict for the appellee, and the present appeal is from a judgment based upon that verdict.

2. *Statement of Facts*

According to Arthur M. James, an expert witness for the appellant, a fork lift truck is used to transport lumber or other commodity. The machine in question consisted of "a front axle with four tires and a rear axle with two tires, an engine and gears to provide power and steering, and a counterbalance or counterweight to overcome the * * * tipping effect of the weight in the front."

According to the agreed statement of facts, the appellee manufactures and sells fork lift trucks in Dallas, Oregon. In September, 1952, it sold a 130-inch wheel base Gerlinger Fork Lift Truck, delivered at Dallas, to Herbert E. Philbrook, of Philo, California. On that date, Philbrook arrived at Dallas with a tractor-trailer to take delivery of the truck. He drove the tractor-trailer with its load from Dallas to Philo to the L. E. Whitaker Mill, arriving on September 9, 1952.

That afternoon a Ross fork lift was used to unload the boom and the lift truck was driven off the trailer by the appellant. While the Gerlinger fork lift truck was being operated by the appellant, he received the injuries that form the basis of this suit.

Although the agreed statement of facts gives no particulars, the details of the accident can be pieced together from the transcript of record. According to the appellant's testimony, "The truck came in with this heavy truck on it * * *. We used another lift truck to take that boom off the load out onto the ground. * * *

"I was * * * up on the truck * * *. Then I drove it (the motor section of the fork lift) directly off the truck onto this dock * * *. I had backed that down in low reverse, backed down about three lengths of the machine, when it flipped bottomside up."

The appellant testified that he was driving about two miles an hour. He said that he drove the machine "right off the truck onto this dock". "I lined it up and came straight down".

As the appellant came down the "hill" or "ramp or incline", as it has been variously called, he was looking over his left shoulder, watching the direction in which he was going, with his right hand around the steering wheel. He then made a 20 degree turn, up toward a lumber yard.

"As I turned the wheel," the appellant continued, "I turned around and the next thing I remember I was laying underneath it."

It will be seen that the front boom assembly was detached, so that when it was unloaded the motor section would be driven off under its own power and the fork lift assembly would be unloaded *separately* with a crane or other machine.

James, the appellant's expert who is a licensed consulting engineer, testified that the fork lift truck would be safe to operate backward and down the slope in question *with* the fork lift, but "very dangerous" with the boom assembly *detached*.

On the other hand, Harry A. Herzog, a sawmill owner, who has three Gerlinger lift trucks of the 130-inch wheelbase type that figures in the present litigation, and who was called as a witness for the appellee, said:

> "No, don't make any difference in driving with the boom off or the boom on. They are just the same as far as I am concerned about tipping over. I think they would tip over quicker with the boom on than with the boom off."

3. *Principal Questions Presented*

During the oral argument, counsel for the appellant announced that he was presenting only two points; namely, (1) Testimony that a witness has never heard of a prior accident is inadmissible; and (2) The instructions of the District Court were so erroneous, confusing, and misleading that this Court should review them on its own motion.

A number of other points are urged in the appellant's brief. Despite the fact that they were not argued orally, we are not assuming that they have been abandoned, but will refer to them hereinafter.

4. *The Admissibility of Testimony That the Witness Had Never Heard of a Prior Accident Is Clear Under Both California and Oregon Law*

Counsel for the appellee inquired of Victor O. Williams, executive vice president and general manager of the appellee, who had been called as a witness by the appellant, whether in the years that the appellee had been manufacturing fork lift trucks there had "ever been a complaint, either in court or to the (appellee), as to the stability of this fork lift truck (with the boom assembly detached) when being loaded or unloaded or any other time?"

After the witness had replied in the negative, counsel for the appellant objected on the ground of irrelevancy, and his objection was overruled. The admission of this testimony is specified as error. The appellant also now objects to the fact that Williams was permitted to testify that "he had never heard of a Gerlinger fork lift truck tipping over while being unloaded and loaded where the general practice was to ship them with the boom assembly detached." This latter bit of testimony was not objected to at the time it was given, and, contrary to the language used in the specification, the question about the "tipping over" did not include the element of whether Williams had "heard" of it. The record shows the question and answer were as follows:

> "Q. In the time Gerlinger has been manufacturing these fork lift

trucks has there ever been a case of one tipping over while being unloaded or loaded? A. *Not to my knowledge.*"

The appellant objects to the admission of similar testimony by Ray W. Gohrke, assistant manager of the appellee, and the observations that follow apply to his evidence as well.

Although the appellant has stoutly maintained in his brief and in his oral argument that "where substantial (substantive?) rights are directly controlled by what procedural rule would otherwise be followed, the law of California applies as the place of injury", he quotes at some length from a United States Supreme Court decision in which the question of a conflict of laws was in no way involved. In First National Bank of Xenia, Ohio v. Stewart, 1885, 114 U.S. 224, 232, 5 S.Ct. 845, 849, 29 L.Ed. 101, a bank teller was asked the following question:

" 'Had you any information, from any source, of any money being received at the bank on or about the Wednesday preceding McMillan's death from McMillan?' "

The offer of proof showed that a negative reply was expected. The Supreme Court said:

"The court excluded the question, and its action is assigned for error.

"The inadmissibility of both the question and the answer, had the answer been given, is obvious. The question called for the information which from any source might be in the possession of the witness, and not for his knowledge. An answer detailing the hearsay statements of others, whether verbal or in writing, made at any time or place, would have been responsive. The objection to the question was well taken, and the court was right in excluding it.

"Upon the authorities already cited a negative answer to the question would have been too vague and conjectural to be admitted as evidence. It did not appear but[1] that many payments of money might have been made to the bank without the knowledge of the witness. It was not shown what his duties were, whether to receive or pay out money; it was not shown that he was in the bank on or about the Wednesday when the payment by McMillan was alleged to have been made; it was not shown that if the payment had been made by draft or certificate of deposit sent to the bank in a letter, it would have passed through his hands."

The Stewart case is in no way in point. There the issue was whether the bank had received from McMillan certain money with which to pay his note held by a third party, or whether it had paid the note out of its own funds. The *fact* of payment by McMillan was sought to be disproved by means of the testimony of the teller: the question of *notice* was not involved. Here, on the other hand, the matter of notice *was* distinctly in issue. In the pre-trial order, two of the contentions of the appellant are set forth as follows:

". "* * * (appellee) was guilty of negligence:

"a. In failing to warn the purchaser to assemble the boom before operating the fork lift truck although (appellee) *knew or should have known* that said fork lift truck was unstable and extra hazardous with the boom detached," etc.

"b. In failing to mark upon an instruction plate in the cab of said fork lift truck a warning not to operate the same with the boom detached, although (appellee) *knew or should have known* that said fork lift truck was unstable and extra

1. In the appellant's brief, there is omitted from this excerpt from Stewart the oppositive word "but". The omission—no

doubt inadvertent—of this quasi-negative completely alters the meaning of the sentence and renders it pointless.

hazardous without the boom and liable to overturn," etc. (Emphasis supplied.)

The appellant also cites Murphy v. County of Lake, 1951, 106 Cal.App.2d 61, 65, 234 P.2d 712, 715, where it was held "that evidence of the absence of previous accidents to show that no dangerous condition existed is inadmissible." Here again the appellant misconceives the purpose of the testimony in question; namely, to show that responsible officers of the appellee had *no notice* of any prior accidents.

Finally, the appellant relies upon Giddings v. Superior Oil Co., 1951, 106 Cal.App.2d 607, 612, 235 P.2d 843, 845. There the question of notice *was* involved, but the case can be distinguished on the facts from the present suit:

"Appellants also urge that the trial court erred in excluding from evidence the fact that prior to the instant accident, a complaint had been filed on behalf of a seven year old child for alleged injuries received on an oil pump of respondent situated in a different locality. By this evidence, appellants 'sought to prove that respondent had *notice* that an oil well pump of the type in question is an attraction to children and that it is a dangerous instrumentality.'

"Before evidence of this character may be received 'it must first be shown, or an offer made to show, that the conditions were similar.' [Case cited.] What might constitute an attractive nuisance to a seven year old child would be immaterial as applied to a fourteen year old high school student."

The Giddings case can easily be distinguished on the ground that there the effort was to introduce evidence that there *had* been a previous accident, but to a child of far less maturity than the one who figured in the case then before the court. Here, on the other hand, we are considering the admissibility of testimony that the officers of the company had heard of *no* accidents in which a

Gerlinger fork lift truck *without* a boom had tipped. The testimony was *negative*, and related to notice of any accident to a "boomless" lift truck *anywhere and at any time.*

Up to this point we have assumed, for the sake of the argument, that this problem of evidence should be solved according to the law of the State of California, where the alleged tort occurred. This assumption, however, is not founded in law. In Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., we find the following statement:

"All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, *or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held.*" (Emphasis supplied.)

In the instant case, the State of the forum is Oregon. In the courts of that commonwealth, evidence of the type we are now discussing would clearly be admissible.

In Robertson v. Coca Cola Bottling Co., 1952, 195 Or. 668, 247 P.2d 217, 223, Chief Justice Brand said:

"It is contended that the court erred in permitting agents of the defendant to testify that they had never before heard of a bottle of Coca Cola exploding, and that there had never before been a claim filed against the company. There is a conflict of authority upon this question. [Authorities cited.] However, this court has at least once indicated its adherence to the rule of admissibility. In Briggs v. John Yeon Co., 168 Or. 239, 122 P.2d 444, 449, we said:

"'* * * That other persons had used the floor without mishap is evidence in conflict with the truth of plaintiff's claim, and would warrant an inference that the floor was

in a reasonably safe condition, but it would be for a jury to say whether it overcame the force of the sworn testimony on behalf of the plaintiff and the reasonable inferences therefrom. * * *'

"*Where, as in this case* [and the case now before us], *it is alleged that the defendant knew, or in the exercise of reasonable care should have known of the danger, we think such evidence is admissible.*" (Emphasis supplied.)

█ The appellant suggests, as we have already noted in passing, that "where substantial (he probably means "substantive", as contradistinguished from "adjective" or "procedural") rights" are involved, "the law of California applies as the place of injury". We do not agree. The admissibility of testimony relating to prior notice of a dangerous instrumentality is simply a problem in evidence, and is therefore a matter of adjective law, governed by the *lex fori.* This is a hornbook principle, and need not be labored here.[2]

█ In any event, it is clear that, under the jurisprudence of California as well as that of Oregon, in a case of this kind evidence of the type in question is admissible, if it is introduced for the purpose of showing *notice of a disputed fact* and not *to prove the fact itself.* It is unquestionably admissible in cases where, as here, a *negative* is to be established; for in such a situation, no accident *at all* having been reported, a similarity of circumstances is not merely unnecessary but *impossible.* If responsible officers of a company have heard of *no* accidents to a boomless fork lift truck, the questions of details becomes moot, at least so far as *notice* is concerned.

It follows from the foregoing that the jury could well conclude that the ap-

pellee's officers were not negligent in not warning their customers against operating the fork lift trucks without the booms, when they themselves had not heard of any accidents that had occurred as a result of such boomless operation. They could not be chargeable with negligence for failing to warn of a danger that they had no reason to believe existed.

Indeed, evidence adduced by the appellant himself indicates that it was precisely this belief on the part of the appellee's officers in the safety of the boomless operation that accounted for their not warning their customers against it. Vice President Williams testified:

"Q. I assume that you did not give any warning of the type I have been asking about because, in your opinion, there was no danger of operating it with the boom detached, is that right? A. That is correct."

Similarly, Gordon Akers, the appellee's assembly foreman, likewise called by the appellant, said on direct examination:

"Q. I take it that, having been employed there for 18 years, if you had thought there was any danger you would have given a warning? A. That is true.

"Q. If you thought that there had been a change in design which had so affected its stability as to make it liable to turn over under those conditions, you would have given warnings? A. Yes."

5. *The Appellant Is in No Position to Attack the Instructions*

█ When the District Judge had given his instructions, he announced to counsel that under the Rules of Civil Procedure, they were at that time entitled to state their objections to his charge. Mr. Dilley, who throughout the

---

2. For a recent discussion of the problem of a conflict of laws in a Federal case where, as here, jurisdiction is based upon diversity of citizenship, see the opinion of James M. Carter, D. J., in Anderson v. Hearst Publishing Co., D.C.Cal.1954, 120 F.Supp. 850, 853–857; and an extended comment on Judge Carter's opinion in Stanford Law Review, March, 1955, Volume 7, No. 2, pages 275–285, entitled "Public Policy and the Conflict of Laws"..

trial had shown skill, zeal, and alertness on behalf of the appellant, made the following formal statement:

"The plaintiff has no objection to the instructions."

Rule 51 of the Federal Rules of Civil Procedure reads in part as follows:

"* * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *"

Rule 18 subd. 2(d) of this Court provides in part:

"* * * When the error alleged is to the charge of the court, the specification shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused, *together with the grounds of the objections urged at the trial.*" (Emphasis supplied.)

Not having complied with Rule 51, the appellant obviously was unable to comply with the final phrase contained in the sentence in Rule 18, subd. 2(d) quoted above.

Because of this flagrant disregard of the Federal Rules of Civil Procedure and of the Rules of this Court, the appellant now has no standing to object to the charge of the District Judge.

In Woodworkers Tool Works v. Byrne, 9 Cir., 1951, 191 F.2d 667, 676, this Court said:

"We are of the opinion that Woodworkers Tool Works may not take advantage of any error in the charge as to *res ipsa loquitur* to procure a reversal because it made no appropriate objection as required by Rule 51, F.R.C.P., 28 U.S.C.A. The appellant failed to state *distinctly* to the court below the matter in the charge to which it objected and the ground of its objection. The objection made was only a general objection to a charge based on *res ipsa loquitur*, and counsel stated in substance only that the California Courts had not extended the doctrine to manufacturers 'except in the beverage cases'. * * * It is obvious that the requirements of Rule 51 were not met, and the doctrine of 'plain error' is no longer available in this Circuit. [Case cited.] Consequently, we will not reverse the judgment on the ground that the charge of *res ipsa loquitur* was erroneous. [Cases cited.]"

Even in criminal cases, where the courts are ever on the alert to guard the rights of defendants, a similar rule has been promulgated and has been enforced.[3]

6. *The Other Specified Errors Contain No Merit.*

■ The appellant also asserts that the appellee's objections to interrogatories were filed three days too late, and that the objections were "invalid", anyway; and that opinion testimony based upon experience of the witness with other types of machinery, etc., is inadmissible. Here again we find that the criticism is captious, and that the matters complained of constitute no grounds for reversal.

7. *Conclusion*

The Court below did not err in admitting testimony to the effect that responsible officers of the appellee company had never heard of any accident involving a boomless fork lift truck.

Because of failure seasonably to object to the instructions of the District Judge, the appellant is now precluded from attacking them.

The other specified errors, enumerated above, do not constitute grounds for reversal.

Accordingly, the judgment is *affirmed.*

3. Rule 30, Rules of Criminal Procedure, 18 U.S.C.A.; Kobey v. United States, 9 Cir., 1953, 208 F.2d 583, 597–598; Benatar v United States, 9 Cir., 1954, 209 F.2d 734, 743–744, certiorari denied 1954, 347 U.S. 974, 74 S.Ct. 786, 98 L.Ed. 1114.